IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF KANSAS


HARRY A. CLINE,

            Plaintiff,
      vs.                              **Case No. 07-4027-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
            Defendant.
_____


                       **MEMORANDUM AND ORDER**

    Plaintiff has filed an application for social security disability benefits. He alleges an onset date of April 4, 2001. Plaintiff's claim for benefits has been remanded once by Judge Robinson of this court for further proceedings. Case No. 05-4144, Doc. No. 9. An administrative hearing was conducted after the remand. A different administrative law judge (ALJ) rendered a decision rejecting plaintiff's application for benefits. (Tr. 486). Defendant has adopted the decision to deny benefits. This case is now before the court to review defendant's decision.

    ALJ DECISION

    The ALJ's decision set forth the five-step evaluation process followed in these cases:

> At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity. . . . At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" . . . . At step three, the undersigned must determine whether the claimant's impairment or

> combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 . . . . Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity . . . . Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work . . . . At the last step of the sequential evaluation process . . . , the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.

(Tr. 487-88).

The ALJ found that plaintiff has not engaged in substantial gainful activity since April 4, 2001. (Tr. 488). She further found that plaintiff has the following severe impairments: arthritis of the right knee and other joints, depression, post-traumatic stress disorder, and anxiety disorder not otherwise specified. (Tr. 488). She determined that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in Appendix 1. (Tr. 491). The ALJ found that plaintiff retained the residual functional capacity "to perform medium exertional work with the need to avoid concentrated exposure to extreme cold, and with moderate limitations in interacting with co-workers, supervisors, and the general public, and the ability to perform simple, routine, repetitive work." (Tr. 491). Finally, the ALJ concluded, at least in part on the basis of a vocational expert's testimony, that plaintiff was capable of performing his past relevant work as a janitor. (Tr. 494).

PLAINTIFF'S ARGUMENTS

<u>Treating physician</u>

Plaintiff's first argument is that the ALJ failed to give the proper weight to the opinion of Dr. Samuel L. Bradshaw, a treating physician.

The Tenth Circuit discussed how treating physicians' opinions are considered in social security cases in <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1119 (10th Cir. 2004):

> According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. § 404.1527(d)(2).  "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).  To make this determination, the ALJ:
>
>> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.
>
> <u>Id</u>. (quotations omitted); <u>see also</u> § 404.1527(d)(2).
>
> Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'" <u>Id</u>. (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4).

>Those factors are:
>(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (quotation omitted).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Id. at 1301 (quotations omitted).

Dr. Bradshaw has made at least three statements addressing the nature and extent of plaintiff's disability. On April 7, 2004 Dr. Bradshaw wrote:

>The anger and touchiness that go with depression make it impossible for Mr. Cline to carry a regular job with a supervisor. When supervised he gets rage and has to deal with holding that back to avoid hurting the supervisor. Therefore he is disabled and that is at the 100% level.

(Tr. 406). On November 7, 2005 Dr. Bradshaw wrote:

>Patient reports he has some good times and keeps active. However, the maximum time he could be occupied productively is a few hours and could not be kept up regularly. This means he is not able to get any kind of paid for work. He is 100% disabled. He is being asked by me to be involved in some kind of activity. This is for therapeutic reasons but could not be construed as

4

>     competitive work.

(Tr. 589).  On November 10, 2005 Dr. Bradshaw wrote:

>     Mr. Cline is chronically depressed and guilty.  He cannot
>     maintain a regular schedule.  He would worsen under the
>     stress of competitive work.

(Tr. 422).  Dr. Bradshaw has found that plaintiff was markedly limited in his ability to:  understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and accept instructions and respond appropriately to criticism from supervisors.  (Tr. 420-21).

Dr. Bradshaw also signed three form letters indicating that because of "medical problems" it was "impossible" for plaintiff to work during the months of May, June and July 2001.  (Tr. 333-335).

There are a large number of treatment notes from Dr. Bradshaw in the record.  Almost all of the notes indicate that plaintiff is coherent.  Several reflect that plaintiff is "euthymic", which we take to mean "tranquil."  See Sultan v. Barnhart, 368 F.3d 857, 861 n. 2 (8th Cir. 2004).  Many of the notes show that plaintiff is sad or "a bit sad."  Some show that plaintiff is "tense" or "a little tense."  There are occasional reports of anxiety and anger. There are no indications of cognitive difficulty.  It should be noted that plaintiff was going through a divorce during part of this time and this had an impact upon his emotional condition.

Plaintiff's GAF score prior to treatment and therapy was 65.

(Tr. 212).

The ALJ discounted Dr. Bradshaw's conclusions regarding plaintiff for the following reasons:

> [T]he opinions of Dr. Bradshaw are not supported by the medical evidence, treatment records or statements of the claimant regarding his daily activities and physical abilities.  The doctor's opinions are not supported by his own treatment notes or by citation to any clinical or laboratory tests.  The undersigned gives little weight to the opinions of this physician.  The doctor's statements are primarily conclusions that are not explained and are contradicted by medical observations and findings often indicating that the claimant is stable, coherent, and euthymic.  The doctor's conclusions lack an explanation of how impairments affect the ability to function when he uses his medications and receives therapy.  In fact, the claimant was able to sustain an 18-year employment record as a janitor with the Post Office.

(Tr. 493).

It appears to the court that the ALJ considered the factors she was supposed to consider in evaluating the opinion of Dr. Bradshaw.  It also appears to the court that her evaluation of Dr. Bradshaw's opinion is supported by substantial evidence.

The ALJ held that Dr. Bradshaw's opinions "are not supported by the medical evidence, treatment records or statements of the claimant regarding his daily activities and physical abilities." (Tr. 493).  The medical evidence and treatment records do support the diagnosis of depression.  There is no dispute regarding that.  This evidence includes references to low energy, lack of sleep, and feelings of guilt or hopelessness.  But, the medical evidence and treatment records do not support the conclusion that plaintiff has

marked limitations in the ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and accept instructions and respond appropriately to criticism from supervisors.  The record is bare of observed signs, symptoms or tests that substantiate these limitations.

The medical records and treatment notes also provide little support for plaintiff's primary claim (see Tr. 606) that he has a disabling degree of difficulty being around and trusting people, including supervisors.  While Dr. Bradshaw indicated on a form that there were "repeated episodes of deterioration or decompensation in work or work-like settings" (Tr. 420), the record only mentions one incident at the break room at plaintiff's former place of employment.  That incident did not appear to involve a supervisor.  When plaintiff was examined by Dr. Robert Barnett, a licensed psychologist, the doctor made the following observations:

> [Plaintiff] presented as a friendly but pressured individual who made a number of spontaneous verbalizations, which were unusually circumstantial and tangential.  He made appropriate eye contact and has an active sense of humor . . . Intellectually he gives the impression of functioning in the low average range.  His affect during the interview was elevated and animated.  He describes his current mood as "Pissy, leery of people." . . . . Mr. Cline said he does not have a bad temper . . . He admits to difficulty trusting others but described himself as careful and cautious rather than paranoid.  Mr. Cline complains of short-term memory problems but was alert and fully oriented for the interview.

7

> . . . .
> Mr. Cline identified mistrust of people and "Being made a fool of" as the most significant barriers to employment. He said these problems began when he worked at the post office. When asked if he got along well with co-workers he responded, "No - they'd run to the boss and talk shit on me." When asked if he got along well with authority figures he responded, "No I was a union steward." Mr. Cline does not appear to be intellectually limited and showed no difficulty with attention and concentration during the interview.

(Tr. 362). In our judgment, these observations do not support Dr. Bradshaw's opinion of marked limitations in memory, concentration, ability to follow a routine, and ability to accept instructions and interact appropriately with supervisors. The court has already summarized the treatment records of Dr. Bradshaw. These records by and large do not manifest any signs, symptoms or tests that support Dr. Bradshaw's opinions regarding the disabling effects of plaintiff's depression. Dr. Samuel Golon, when reviewing the record, concluded that plaintiff was capable of simple, repetitive, low stress work with limited interaction with the public. (Tr. 620). Plaintiff criticizes any reliance upon Dr. Golon because Dr. Golon expressed his opinion in terms of a feeling or a belief, rather than as a medical opinion. However, the Federal Rules of Evidence do not apply in these cases. See 42 U.S.C. § 405(b)(1); Bayliss v. Barnhart, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005). Although Dr. Bradshaw's opinion deserves the consideration afforded to the opinions of treating physicians, the ALJ could properly consider the testimony of Dr. Golon.

As the ALJ stated, Dr. Bradshaw's opinions regarding plaintiff's limitations are not supported by plaintiff's statements regarding his daily activities and physical abilities. This is understandable, however, because Dr. Bradshaw did not focus his comments upon plaintiff's physical abilities and plaintiff's daily activities. Dr. Bradshaw was most concerned about plaintiff's ability to get along with other people. While plaintiff's statements regarding his activities and abilities substantiate a capacity to live independently, they do not bear strongly upon his capacity to get along with other people. Plaintiff did testify regarding some problems with memory and concentration as well as episodes of depression during which he would isolate himself from other people for two days at a time. This aspect of his testimony supports Dr. Bradshaw's opinion. However, as the ALJ commented, plaintiff's 18-year history in the same job did not support Dr. Bradshaw's position or plaintiff's testimony.

Of course, Dr. Bradshaw's broad conclusions regarding issues reserved for the Commissioner's decision are not entitled to controlling weight. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004).

In summary, the ALJ properly evaluated Dr. Bradshaw's opinion in light of the treatment notes, the opinions of other medical professionals, plaintiff's description of his activities and other factors discussed previously. Substantial evidence supports her

9

decision to give little weight to Dr. Bradshaw's opinion that plaintiff is disabled from any employment.

### Credibility

Plaintiff's next argument is that the ALJ's credibility finding was not supported by substantial evidence. The ALJ discussed case law and regulations relating to credibility findings in social security cases. (Tr. 491-92). Of course, these sources emphasize a consideration of the entire record and a multitude of factors. The ALJ determined that plaintiff's statements concerning his impairments were only partially credible. (Tr. 492). She found that the medical notes and opinions weighed against his allegations of disability. She noted that plaintiff did not require an assistive device or pain medication to compensate for his knee pain. She concluded that medical treatment for plaintiff's physical and mental problems appeared to have improved his condition. She held that plaintiff's daily activities were inconsistent with his claims of impairments. These activities included: house cleaning, lawn mowing, laundry, social visits, use of public transportation, grocery shopping, church attendance, and the management of rental property. The ALJ further stated: "Also impacting negatively on the claimant's credibility is the fact that he cited service in Viet Nam as the cause of his mental health problems when he never served in Viet Nam."

Plaintiff's argument against the ALJ's credibility findings

focuses entirely upon the ALJ's remark regarding service during the war in Viet Nam. Plaintiff did not serve in Viet Nam, although he was in the service during the Viet Nam war. Plaintiff contends that he has been truthful and consistent in his statements to doctors regarding his military service and that the ALJ was misled by Dr. Barnett, who erroneously assumed in his report (Tr. 360-61) that plaintiff was a Viet Nam combat veteran.[1]

We do not believe the ALJ's statement regarding this issue was critical to the ALJ's credibility finding. The ALJ considered many factors in evaluating plaintiff's credibility. The ALJ stated:

> Considering the above-cited factors and overall record, the undersigned finds that claimant is not fully credible. He has some physical and mental limitations but these limitations are not as severe as alleged. The claimant's statements concerning his impairments and their impact on his ability to work are only partially credible in light of the reports of the treating and examining practitioners, discrepancies between the claimant's assertions regarding the severity of his symptoms and limitations and information contained in the reports regarding medical signs, findings, the degree of medical treatment required and frequency of treatment, and daily activities.

(Tr. 493-94). The ALJ appears to have taken a comprehensive look at the factors relevant to making a credibility determination. Even if the ALJ was mistaken regarding one issue, we believe her credibility finding was supported by substantial evidence. See Batson v. Commissioner of Social Security Administration, 359 F.3d

---

[1] The record also suggests that plaintiff told Dr. Khanna that he served in the Vietnam war. (Tr. 355).

1190, 1197 (9th Cir. 2004) (error ALJ may have committed in making an assumption from the record did not negate the validity of ALJ's ultimate credibility conclusion); Frank v. Barnhart, 326 F.3d 618, 621-22 (5th Cir. 2003) (affirming denial of benefits on the record even if ALJ mistakenly doubted claimant's statement that she would prefer to work).

Residual functional capacity (RFC)

Plaintiff contends that the ALJ erred by concluding that plaintiff retained the residual functional capacity (RFC) to work as a janitor. Plaintiff asserts that this conclusion improperly discounts the opinion of Dr. Bradshaw, a long-time treating physician, and gives too much credit to the conclusion of Dr. Golon, who never examined plaintiff but did review the record in this matter. The court rejects this argument.

The ALJ gave some weight to Dr. Bradshaw's opinion and considered it together with the medical record and the opinions of the other professionals in this case. Dr. Golon and the ALJ reached the conclusion that plaintiff had moderate, as opposed to marked, limitations in social functioning and in dealing with the public and supervisors. This led to the conclusion, in consultation with a vocational expert, that plaintiff could perform the work of a janitor. The ALJ, as discussed earlier, properly considered the opinion of Dr. Bradshaw as a treating physician. We believe the conclusion the ALJ reached regarding plaintiff's RFC

was supported by substantial evidence.

Hypothetical question and past relevant work

Plaintiff's application for disability insurance benefits was originally denied in an ALJ decision dated October 17, 2005. This decision was reversed and remanded upon an agreed order signed by U.S. District Judge Julie Robinson on March 9, 2006. The order stated that on remand the ALJ was instructed to obtain supplemental vocational expert testimony in response to a hypothetical question which included all limitations found in the RFC as assessed by the ALJ, "especially the limitation of sitting, standing, and walking a maximum of six hours in an eight-hour workday, and the requirement of the option to change position every 20 to 30 minutes." Case No. 05-4144, Doc. No. 9. As previously noted, a different ALJ heard this matter on remand.

In plaintiff's reply brief, plaintiff raises an issue regarding whether the proper hypothetical question was posed to the vocational expert by the ALJ on remand. Plaintiff also contends that the ALJ failed in her duty to inquire as to the exertional demands of plaintiff's prior work. Neither of these issues was raised in plaintiff's opening brief. Normally, new issues are not permitted to be raised in reply briefs. Damato v. Sullivan, 945 F.2d 982, 988 n.5 (7th Cir. 1991); Boilermaker-Blacksmith Nat.

13

Pension Fund v. Gendron, 67 F.Supp.2d 1250, 1257 n.4 (D.Kan. 1999). This case warrants the application of that rule as it is clear from the record that plaintiff's difficulties with depression are what he alleges forced him from continuing his work as a janitor. (Tr. 606-07 & 624).

Furthermore, the vocational expert who testified in this case appeared familiar with plaintiff's physical capacity and with the physical requirements of a janitorial position. The vocational expert was questioned by the ALJ and by plaintiff's attorney, who could have expanded the record if he believed it was necessary and appropriate. The vocational expert's testimony and the record as a whole support the ALJ's decision that plaintiff could return to his past relevant work.

### Dr. Barnett's concluding remark

Dr. Barnett is a licensed psychologist who conducted a mental status examination of plaintiff. In the concluding paragraph of his report, Dr. Barnett stated: "[Plaintiff] does not appear he is physically capable of working an 8-hour day due to vertigo, bad back and bad knee." (Tr. 362). In plaintiff's reply brief, he raises this statement as grounds to support his claim for disability benefits.

Again, this is a new issue raised in the reply brief. As such, it should be rejected. Furthermore, Dr. Barnett is a psychologist who conducted a mental examination. It was proper for

14

the ALJ to discount his opinion regarding plaintiff's physical condition and to give primary weight to the other parts of the record where persons who made a physical examination of plaintiff rendered an opinion regarding his physical capacity for work-related activity.

CONCLUSION

The court has considered all of the arguments made by plaintiff in this matter. The court is convinced that defendant's decision is supported by substantial evidence and that the correct legal standards were applied. Therefore, the court shall affirm defendant's decision to deny plaintiff's application for disability income benefits.

**IT IS SO ORDERED.**

Dated this 19th day of November, 2007 at Topeka, Kansas.

                              s/Richard D. Rogers
                              United States District Judge